NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ERIK KARL OMAN, *Appellant*.

No. 1 CA-CR 12-0298
FILED 4-3-2014

———————————————

Appeal from the Superior Court in Maricopa County
No.  CR2010-166177-001
The Honorable Robert L. Gottsfield, Judge

**AFFIRMED**

———————————————

COUNSEL

Arizona Attorney General's Office, Phoenix
By  Adriana M. Zick
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By  Cory Engle
*Counsel for Appellant*

———————————————

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

———————————————

**G E M M I L L, Judge**,

¶1        Erik Karl Oman appeals his conviction and sentence for aggravated assault.  He challenges the trial court's order precluding evidence of specific examples of his peaceful character and claims the court erred in instructing the jury on the defensive display of a firearm. Finding no error, we affirm.

## BACKGROUND

¶2        We review the facts in the light most favorable to sustaining the jury's verdict.  *See State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

¶3        This case arises out of a road rage incident that occurred in the evening of December 17, 2010.  P.N. was waiting at a red light directly behind Oman who was driving the first car in the lane.  Oman was turned around in his seat tending to his dogs in the back when the traffic signal changed.  P.N. "beeped" his horn to get Oman's attention, and the two proceeded to turn left.

¶4        As they then drove alongside each other, Oman was gesturing to P.N., and he swerved into P.N.'s lane.  After stopping next to each other at another red light, Oman, who was on P.N.'s passenger side, began yelling at P.N. that he "has his hand on his gun, and he's going to shoot [P.N.]."

¶5        The two men continued to "argu[e]" before Oman got out of his vehicle, reached through P.N.'s front passenger window and pointed a handgun at P.N.'s head.  Oman tried to open the locked passenger door, and P.N. saw the gun "in my face . . . pointed right at me."  Fearing for his life because he thought Oman was going to shoot him, P.N. took his foot off the brake so the forward motion of his truck would move Oman's hand and alter the direction of the pointed weapon.  P.N. proceeded into the intersection against the red light, turned right, and Oman ran alongside the moving vehicle saying, "My finger's on the trigger. I'm going to shoot you."  P.N. sped away and both he and Oman called 911. After police interviewed P.N. and Oman, Officer Bradbury arrested Oman.

¶6        The State charged Oman with aggravated assault, a class three dangerous felony, alleging he used his gun to intentionally place P.N. in reasonable apprehension of imminent physical injury.  *See* Ariz. Rev. Stat. ("A.R.S.") sections 13-1203(A)(2), -1204(A)(2).  At trial, Oman

testified he feared for his life when P.N. swerved toward him and "very aggressively" cut him off. Oman denied pointing his gun at P.N. and claimed he only told P.N. that he "carried" after he exited his vehicle at the stoplight to talk to P.N. in an effort to "diffuse the situation."[1] Oman testified that, when someone is threatening him and he fears his life is in danger, it was his "practice . . . to approach them to try to solve the problem . . . ." To support this assertion, Oman sought to offer testimony from two co-workers regarding specific incidents in which Oman peacefully talked to others with whom he was having a dispute to prevent escalating the issue. The court sustained the State's objection under Arizona Rule of Evidence ("Rule") 405(b). After the close of evidence, Oman requested the court amend its jury instruction regarding defensive display of a firearm under A.R.S. § 13-421. The court ultimately denied the requested instruction.

¶7        The jury found Oman guilty as charged, and the court sentenced him to a mitigated term of five years in prison.[2] Oman unsuccessfully moved for a new trial and a judgment of aquittal. This timely appeal followed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I. Testimony Regarding Specific Incidents of Peacefulness

¶8        Oman argues the superior court's preclusion of evidence regarding specific instances of his peaceful resolution of conflicts violated his constitutional right to present a complete defense. He has failed, however, to show the superior court abused its discretion on precluding this evidence. *See State v. Ayala*, 178 Ariz. 385, 387, 873 P.2d 1307, 1309 (App. 1994) ("Decisions on the admission and exclusion of evidence are left to the sound discretion of the trial court and will be reversed on appeal only when they constitute a clear, prejudicial abuse of discretion.") (internal citations and quotations omitted).

---

[1] Oman testified P.N. possibly saw the handgun holstered on Oman's hip under his jacket.

[2] According to the parties, Defendant was released from prison after the Governor commuted his sentence on March 7, 2013.

¶9 "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," including application of reasonable rules governing the admissibility of evidence. *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also State v. Dickens*, 187 Ariz. 1, 14, 926 P.2d 468, 481 (1996) ("Although a defendant has a fundamental constitutional right to . . . present a defense, the right is limited to the presentation of matters admissible under ordinary evidentiary rules . . . .") *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239, 274 P.3d 509 (2012).

¶10 As relevant here, Rule 405, entitled "Methods of Proving Character," provides:

> **(a) By reputation or opinion.** When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. . . .
>
> **(b) By specific instances of conduct.** When a person's character or character trait is an essential element of a charge . . . the character or trait may also be proved by relevant specific instances of the person's conduct.

¶11 In conformance with Rule 405(a), the jury heard evidence of Oman's peaceful character based on his own testimony in addition to the opinion and reputation testimony provided by his co-workers. Oman does not argue that his character or trait of character was an essential element of the charge, and therefore specific instances of his peaceful resolution of other disputes were not admissible under Rule 405(b). Finally, Oman presented the following justification defense at trial:

> The defensive display of a firearm by a person against another is justified when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the use or attempted use of unlawful physical force or deadly physical force.

A.R.S. § 13-421(A). Oman's peaceful character was not material to determining whether he was objectively reasonable in displaying his handgun to P.N., meaning his character or trait of character for peacefulness was not an essential element of his justification defense.

¶12        The court did not abuse its discretion in precluding evidence of specific instances of Oman's peacefulness under Rule 405, meaning Oman was not denied his right to present a complete defense.

## II. Jury Instruction Regarding Justification

¶13        After the close of evidence, Oman requested the following jury instruction:

> The defensive display of a firearm justification defense is applied in the following manner: If you find a gun was displayed by the defendant you then must determine whether the defendant was justified under the circumstances in doing so. *If you determine he was justified that is a complete defense to the charge of aggravated assault* and any lesser included offenses. If you determine he was not justified, the defensive display of a firearm justification defense does not apply.

 (Emphasis added.)

¶14        The trial court ultimately rejected that instruction and instead instructed the jury, in relevant part, as follows:

> Justification:   Defensive Display of a Firearm
>
> The defendant is justified in defensively displaying a firearm if a reasonable person would have believed that physical force was immediately necessary to protect himself against the use or attempted use of unlawful physical force or deadly physical force.
>
> *The defendant was not justified in displaying a firearm if:*
>
> > *The defendant . . . [u]ses a firearm during the commission of any criminal act that results in . . . any criminal use of a deadly weapon or dangerous instrument.* See instruction no. 15 for elements of the aggravated assault alleged in this case.
>
> Defensive display of a firearm includes:
>
> > 1. Verbally informing another person that the person possesses or has available a firearm.

2. Exposing or displaying a firearm in a manner that a reasonable person would understand was meant to protect the person against another's use or attempted use of unlawful physical force or deadly physical force.

3. Placing the person's hand on a firearm while the firearm is contained in a pocket, purse or other means of containment or transport.

(Emphasis added.) Oman contends that the instruction given was improper.

¶15 We apply an abuse of discretion standard when reviewing a trial court's decision regarding jury instructions. *State v. Cox*, 214 Ariz. 518, 521, ¶ 16, 155 P.3d 357, 360 (App. 2007). A defendant is entitled to a jury instruction on any theory reasonably supported by the evidence. *State v. Johnson*, 205 Ariz. 413, 417, ¶ 10, 72 P.3d 343, 347 (App. 2003). The purpose of jury instructions is to inform the jury of the applicable law. *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996). Thus, a trial court acts within its discretion when it refuses an instruction that lacks a factual or legal basis. *State v. Vandever*, 211 Ariz. 206, 208, ¶ 7, 119 P.3d 473, 475 (App. 2005). A set of instructions need not be faultless. The instructions, however, must not mislead the jury and must give the jury an understanding of the issues. *See id.*

¶16 Oman contended at trial that he was justified in defensively displaying his handgun to protect himself against P.N.'s aggressive driving. However, the statute that authorizes this justification expressly "does not apply to a person who . . . [u]ses a firearm during the commission of a serious offense as defined in § 13-706." A.R.S. § 13-421(B)(2). Section 13-706 defines "serious offense" as including "[a]ggravated assault . . . involving the . . . threatening exhibition of a deadly weapon[.]" A.R.S. § 13-706(F)(1)(d). "Deadly weapon," in turn "means anything designed for lethal use, including a firearm," A.R.S. § 13-105(15), and a firearm includes "any loaded or unloaded handgun . . . designed to . . . expel a projectile[.]" A.R.S. § 13-105(19).

¶17 Here, the instruction given properly reflects the concept contained in § 13-421 that a person who has committed aggravated assault by using a firearm in a threatening manner may not, under Arizona law, assert a justification defense on the theory he or she was merely defensively

displaying the weapon. Pursuant to the court's instruction and based on the trial evidence, the jury could have returned a not-guilty verdict had it unanimously believed Oman's testimony and concluded he defensively displayed his handgun to P.N. in response to the latter's unlawful use of force against him. Alternatively, by applying the evidence to the same instruction, the jury could (and apparently did) conclude Oman used his gun in a threatening manner thereby resulting in an assault of P.N. and precluding Oman from the defensive display justification defense.

¶18 The instruction requested by Oman, on the other hand, expressly instructed the jury that defensive display of a firearm can be a "complete defense to the charge of aggravated assault," which directly contradicts § 13-421. Consequently, because the instruction given to the jury correctly reflected applicable state law by closely tracking the language in § 13-421,[3]

---

[3] The complete text of A.R.S. § 13-421 reads as follows:

**A.** The defensive display of a firearm by a person against another is justified when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the use or attempted use of unlawful physical force or deadly physical force.

**B.** This section does not apply to a person who:

1. Intentionally provokes another person to use or attempt to use unlawful physical force.

2. Uses a firearm during the commission of a serious offense as defined in § 13-706 or violent crime as defined in § 13-901.03.

**C.** This section does not require the defensive display of a firearm before the use of physical force or the threat of physical force by a person who is otherwise justified in the use or threatened use of physical force.

**D.** For the purposes of this section, "defensive display of a firearm" includes:

1. Verbally informing another person that the person possesses or has available a firearm.

and Oman's requested instruction did not correctly state the law, the court did not abuse its discretion in instructing the jury.

## CONCLUSION

¶19    Oman's conviction and sentence are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: MJT

---

2. Exposing or displaying a firearm in a manner that a reasonable person would understand was meant to protect the person against another's use or attempted use of unlawful physical force or deadly physical force.

3. Placing the person's hand on a firearm while the firearm is contained in a pocket, purse or other means of containment or transport.