873 P.2d 1307

**STATE of Arizona, Appellee,**

v.

**Moses Mark AYALA, Appellant.**

**No. 1 CA–CR 92–1427.**

Court of Appeals of Arizona,
Division 1, Department E.

Jan. 20, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Rory L. Whipple, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

VOSS, Presiding Judge.

This is an appeal from the judgment of guilt and sentence imposed against appellant in the trial court.

## PROCEDURAL HISTORY

Moses Mark Ayala ("Ayala") was indicted on one count of kidnapping and two counts of sexual assault. Ayala pled not guilty and noticed consent as his defense. Ayala was tried before a jury and found guilty of kidnapping, a class 2 felony, and one count of sexual assault, a class 2 felony. Ayala was acquitted on the remaining count of sexual assault.

Ayala filed a motion for new trial, claiming prosecutorial misconduct, verdicts against the weight of evidence, and trial error. This motion was denied and Ayala was sentenced to concurrent seven-year presumptive terms on both the kidnapping and sexual assault convictions. The trial court then gave Ayala 150 days credit for pre-sentence incarceration.

Ayala filed a timely appeal of his conviction and sentence alleging the trial court committed reversible error in allowing the victim to testify that Ayala knew she was not willingly having intercourse with him. We disagree and affirm.

## FACTUAL BACKGROUND

This case arises from events occurring in the late evening and early morning of March 7–8, 1992. Late in the evening of March 7, 1992, Ms. D. ("the victim") went to a wedding reception with some of her friends. She arrived at approximately 9:30 p.m. and stayed at the reception until about 11:30 p.m. The victim then went with her friends to a small party at an apartment on the west side of town. At the apartment, the victim was introduced to Ayala.

The person hosting the party at the apartment became worried that the party was creating too much noise for such a late hour and asked everyone to leave. As they were leaving, the partygoers talked about going to yet another party, this time in Paradise Valley. Those wishing to go began arranging rides in the available vehicles. Possibly at the suggestion of a friend, the victim agreed to ride with Ayala and George Tarango ("Tarango").

At some point during what the victim believed to be a ride to Paradise Valley, Ayala changed direction and headed west. Ayala began driving erratically and at high speed. He also began to put his hands on the victim's legs, as did Tarango. The victim became alarmed and frightened by this situa-

tion and attempted to fend off the men's advances while indicating that she wished to be either let out or taken to their planned destination.

Ayala became agitated at this and drove even faster and threatened the victim. Eventually, Ayala stopped the pickup in a sparsely populated area near 115th Avenue and Thomas Road in west Phoenix. At that location, Ayala and Tarango each raped the victim while the other restrained her. After the rapes, they began to drive again, this time with Tarango driving. After a short distance, Tarango stopped the truck and Ayala ordered the victim to get out of the cab and have intercourse with him again. Upon exiting the cab, the victim slammed the door on Ayala's hand and escaped into some bushes. When she heard the pickup leave, the victim made her way to a nearby group of houses. She knocked on Ms. B's door at approximately 4:00 a.m. on March 8, 1992. Ms. B let the victim in and called the police.

Based on the victim's description and their own investigation, the police determined Ayala was the suspect they were seeking. When questioned, Ayala admitted having intercourse with the victim, but claimed she consented.

## DISCUSSION

Ayala presents only one issue on appeal. Ayala contends the trial court committed reversible error in allowing the victim to testify that Ayala "knew [the victim] was trying to get away from [him]." Ayala bases his contention on the following exchange:

Q. [By Mr. Imbordino] And what part of your body did [Moses] put his penis in?

A. [By Ms. D.] In my vagina.

Q. Now what was George doing while Moses—

A. He was holding my arms at the passenger side of the door. And he was telling ... Moses to F that B and to F that pig ... Moses was telling me that he knows that I like it, that I am enjoying it, and that this is not rape. He goes, "Am I raping you?"

And I said, "No, you are not," . . . . I was trying to go along with him, but I was—

*they knew that I was trying to get away from this, kicking them and stuff.*

MR. WILLIAMS: Objection, speculation. She has no idea what they know.

THE COURT: Overruled.

(Emphasis added.) Ayala argues this testimony constituted inadmissible speculation which prejudiced the jury. We disagree.

### Standard of Review

■ Decisions on the admission and exclusion of evidence are "left to the sound discretion of the trial court," *State v. Murray*, 162 Ariz. 211, 214, 782 P.2d 329, 332 (App.1989), and will be reversed on appeal only when they constitute a clear, prejudicial abuse of discretion. *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). The prejudice must be sufficient to create a reasonable doubt about whether the verdict might have been different had the error not been committed. *State v. Williams*, 133 Ariz. 220, 225, 650 P.2d 1202, 1207 (1982). Thus, to grant Ayala the relief he requests, we must first find the trial court abused its discretion, and then find that there is a reasonable probability the jury would have found Ayala innocent had the error not occurred.

### Analysis

■ The State contends the trial court acted within its discretion in allowing the victim to testify as she did. The State argues the victim's statement was admissible as a firsthand perception or impression under Rule 602 of the Arizona Rules of Evidence. Ayala counters that testimony about another's knowledge can never fall under Rule 602.

■ As a general rule, a lay witness, if competent, may testify to relevant evidence. *State v. Bay*, 150 Ariz. 112, 116, 722 P.2d 280, 284 (1986). More specifically, lay testimony may include inferences or opinions "which are (a) rationally based on the perceptions of the witness and (b) helpful [in understanding] the witness' testimony or [determining] a fact in issue." *State v. Koch*, 138 Ariz. 99, 102, 673 P.2d 297, 300 (1983) (quoting Ariz. R.Evid. 701). The first element of this two-part test "is the familiar requirement ...

embodied in [Arizona Rules of Evidence 602]." *Id.* n. 2. Thus, the admissibility of lay opinion testimony is governed by the following criteria:

1. Is the evidence relevant? (Will it aid the trier of fact in understanding the witness' testimony or in determining a fact in issue?)

2. Is the witness competent to make the statement? (Does the witness have personal knowledge of that to which she is testifying, or, in the alternative, is her testimony rationally based on her perceptions?)

Courts, in using this approach, have held that lay opinions regarding another's knowledge may be admissible. *See, e.g., John Hancock Mut. Life Ins. Co. v. Dutton,* 585 F.2d 1289, 1294 (5th Cir.1978) (daughter allowed to testify—based on witnessing the fatal confrontation between her parents—that her deceased father did not think his wife would kill him); *U.S. v. McClintic,* 570 F.2d 685, 689–90 (8th Cir.1978) (government witness permitted to give opinion—based on discussions with defendant and observations of defendant's actions—that defendant knew the goods were stolen); *M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc. Inc.,* 681 F.2d 930, 932 (4th Cir.1982) ("Evidence is inadmissable under [Rule 602] only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to.").

In Arizona, the Supreme Court uses this approach, *see Koch,* 138 Ariz. 99, 673 P.2d 297, but has yet to uphold the introduction of this type of testimony. In prior opinions, the court has deemed such testimony inadmissible either because the witness' statements were not based on personal knowledge, or because the witness' personal knowledge was insufficient to support the proffered opinion.

For example, in *Koch,* a witness testified that he was "quite sure" his cell mate, not the defendant, had killed the victim. *Id.* at 102, 673 P.2d at 300. The supreme court held that this statement was properly excluded because the witness' limited perceptions while in a holding cell with this other party could not provide a rational basis for such a

conclusion. *Id.* Similarly, in *State v. Adamson,* 136 Ariz. 250, 254, 665 P.2d 972, 976 (1983), the court held that the trial court's decision to admit the victim's statement that the defendant "did it" was error. The court found the statement inadmissible because it was not sufficiently based on the victim's personal knowledge. *Id.*

Here, however, we have a witness drawing a reasonable inference from her firsthand knowledge and perceptions of a situation. The victim testified Ayala and Tarango held her down while she was struggling with them and kicking at them. These facts, provide a rational basis for the victim's conclusion that Ayala and Tarango knew she was trying to get away. Thus, the trial court was within its discretion in finding that the victim, based on her firsthand knowledge, was competent to voice her opinion on this issue. Because of this, we hold that the victim's statement was properly admitted as a permissible inference under Rules 602 and 701.

■ This leaves the question of whether the victim's statement was helpful or germane. Non-consent of the victim is an element of sexual assault, Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–1406 (1989), and can be a pivotal fact in issue in a sexual assault prosecution. *State v. Kidwell,* 106 Ariz. 257, 259, 475 P.2d 241, 243 (1970). In addition, proof that a victim was restrained against her will is a requirement for a kidnapping conviction. A.R.S. §§ 13–1301(2), –1304(A) (1989).

Here, the victim's statement added weight to her contention she was held and forced to have intercourse without her consent and rebutted Ayala's allegations to the contrary. Thus, the victim's testimony about Ayala's awareness of her desire to get away was clearly relevant. Indeed, Ayala himself recognized the relevance of this testimony by describing it in his opening brief as going "to the heart of the case."

Based on the foregoing, we hold that the victim's statement was relevant and that the trial court did not err in finding her competent to make it.

We have reviewed the entire record for fundamental error pursuant to A.R.S. section 13–4035 (1989), and have found none. Ayala's conviction and sentence are affirmed.

McGREGOR and KLEINSCHMIDT, JJ., concur.